No. 25-1155 (L)

# In the United States Court of Appeals for the Fourth Circuit

MONTOYAE DONTAE SHARPE,

*Plaintiff-Appellee,*

v.

DAVID RICKY BEST and JEFFREY SHROCK,

and

CAROLYN MELVIN,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of North Carolina

## DEFENDANTS-APPELLANTS' CONSOLIDATED OPENING BRIEF

Elizabeth A. Martineau
emartineau@martineauking.com
MARTINEAU KING
P.O. Box 241268
Charlotte, NC 28224

Peter Clements
peter.clementsjr@wilsonelser.com
WILSON ELSER MOSKOWITZ EDELMAN
& DICKER LLP
227 W. Trade St., Ste. 300
Charlotte, NC 28217

*Attorneys for Defendants-Appellants
David Ricky Best and Jeffrey Shrock*

April 15, 2025

J. Nicholas Ellis
jnellis@poynerspruill.com
Sydney P. Davis
sdavis@poynerspruill.com
POYNER SPRUILL LLP
P.O. Box 353
Rocky Mount, NC 27802-0353

Michele L. Livingstone
mlivingstone@poynerspruill.com
POYNER SPRUILL LLP
301 S. Charlotte St., Ste 2900
Charlotte, NC 28202

*Attorneys for Defendant-
Appellant Carolyn Melvin*

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENTS

JURISDICTIONAL STATEMENT ............................................................1

I.    Federal Court Jurisdiction................................................................1

II.   Appellate Jurisdiction .....................................................................1

     A.    This Court Has Jurisdiction to Consider Defendants' Appeal Under the Collateral Order Doctrine. ........................................................1

     B.    This Appeal is Timely. ............................................................3

STATEMENT OF THE ISSUES ..............................................................3

STATEMENT OF THE CASE ....................................................................3

     A.    Procedural History ..................................................................3

     B.    Factual Background .................................................................8

          1.    Detectives' Investigation of Radcliffe Homicide.................................................................9

          2.    Plaintiff's Criminal Trial ............................................13

          3.    Post-Trial....................................................................14

SUMMARY OF ARGUMENT ................................................................ 15

STANDARD OF REVIEW ................................................................. 18

ARGUMENT ...................................................................................... 19

I.     Defendants are Entitled to Qualified Immunity. .......................... 19

II.    The District Court Erred in Denying Summary
       Judgment to Detectives on Plaintiff's Fourth
       Amendment Claims Because There Was No Clearly
       Established Constitutional Right to Not Present
       Johnson's Statement to a Magistrate. .......................................... 21

       A.     Standard of Review .............................................................. 21

       B.     Probable Cause Overview ..................................................... 21

       C.     Plaintiff's Fourth Amendment claims fail as a
             matter of law because probable cause existed
             to arrest Plaintiff and therefore, Detectives did
             not violate a constitutional right. ........................................ 25

       D.     Plaintiff's Fourth Amendment claims also fail
             as a matter of law because the disputed parts
             of Johnson's statement are immaterial. ............................... 32

       E.     It was not clearly established on April 7, 1994,
             that Detectives could not seek an arrest
             warrant from a magistrate for Plaintiff's arrest
             based on Johnson's statement. ............................................ 34

III.   The District Court Erred in Denying Summary
       Judgment to Officers Best and Shrock as to
       Plaintiff's *Brady* Claims Because, in 1994, There
       Was No Clearly Established Right For A Defendant

to Receive The Psychiatric Information of a Juvenile Witness. ........................................................................ 36

    A.    Plaintiff's *Brady* claim fails because the allegedly exculpatory material was reasonably available to Plaintiff through alternative sources. .......................................................... 36

    B.    A reasonable officer in 1994 would not have understood a juvenile's mental health treatment was discoverable evidence. .................. 40

IV.    The District Court Erred in Failing to Apply Testimonial Immunity to Count VII of Plaintiff's Amended Complaint ...................................................... 41

    A.    Detectives Are Entitled to Qualified Immunity on the Failure to Investigate Claim ..................... 43

    B.    Detectives were not required to investigate Plaintiff's alibi or alleged exculpatory leads. ....... 45

    C.    In 1994, No Clearly Established Due Process Right Existed Based on the Misconduct Alleged by Plaintiff As to Best. ........................... 48

    D.    Best had no constitutional obligation to speak with Plaintiff's attorneys in 2012 after his retirement from the GPD. .................................. 48

    E.    The right to preservation of useful post-conviction evidence was not clearly established in 2004. ............................................................... 50

    F.    Melvin Is Entitled to Qualified Immunity on the Failure to Intervene Claim. .......................... 52

        1.    Bystander liability was not clearly established in 1994 and 1995. ..................... 52

    2. Even if bystander liability was clearly established in 1994 and 1995, which is denied, the specific right at issue was not clearly defined. ...........................................54

G. Detectives Are Entitled to Qualified Immunity on the Knowing Use of False Evidence Claims. ...................58

V. Detectives are Entitled to Public Official Immunity.....................63

CONCLUSION ........................................................................65

CERTIFICATE OF COMPLIANCE.........................................68

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ahlers v. Schebil,*
  188 F.3d 365 (6th Cir. 1999) ............................................ 47

*Al Shimari v. CACI Int'l, Inc.,*
  679 F.3d 205 (4th Cir. 2012) ............................................ 9

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ........................................................ 20

*Arizona v. Youngblood,*
  488 U.S. 51 (1988) .......................................................... 50

*Ashcroft v. al-Kidd,*
  563 U.S. 743 (2011) ........................................................ 19

*Atkinson v. Godfrey,*
  100 F.4th 498 (4th Cir. 2024) ........................................ 54

*Baker v. McCollan,*
  443 U.S. 137 (1979) .................................................. 24,43

*Balogh v. Virginia,*
  120 F.4th 127 (2024) ...................................................... 54

*Balogh v. Virginia,*
  No. 24-891, 2025 WL 1020379 (U.S. Apr. 7, 2025) .......... 54

*Bartley v. City of High Point,*
  381 N.C. 287, 873 S.E.2d 525 (2022) .............................. 64

*Behrens v. Pelletier,*
  516 U.S. 299 (1996) .......................................................... 2

*Boyd v. French,*
  147 F.3d 319 (4th Cir.1998) ............................................ 60

v

*Brice v. Nkaru,*
220 F.3d 233 (4th Cir. 2000).......................................42, 46

*Briscoe v. LaHue,*
460 U.S. 325 (1983)............................................................42

*Caraway v. City of Pineville,*
111 F.4th 369 (4th Cir. 2024) ....................................64, 65

*Matter of D.A.H.,*
277 N.C. App. 16, 857 S.E.2d 771 (2021) ........................55

*Daniels v. Williams,*
474 U.S. 327 (1986)....................................................43, 59

*Danser v. Stansberry,*
772 F.3d 340 (4th Cir. 2014)...............................................1

*Devereaux v. Abbey,*
263 F.3d 1070 (9th Cir. 2001)...........................................55

*District of Columbia v. Wesby,*
583 U.S. 48 (2018)......................................................22, 53

*Doe v. Broderick,*
225 F.3d 440 (4th Cir. 2000)............................................40

*Doe v. Charlotte Mecklenburg Bd. of Educ.,*
No. 23-1182, 2024 WL 3565522
(4th Cir. July 29, 2024) (unpublished) .............................20

*Doe v. City of Charlotte,*
273 N.C. App. 10, 848 S.E.2d 1 (2020) ............................64

*Durham v. Jones,*
737 F.3d 291 (4th Cir. 2013)................................18, 28, 29

*English v. Clarke,*
90 F.4th 636 (4th Cir. 2024) ......................................22, 53

*Evans v. Chambers,*
703 F.3d 636 (4th Cir. 2012)................................24, 34, 59

*Gilliam v. Sealey,*
  932 F.3d 216 (4th Cir. 2019).................................... *passim*

*Goodwin v. Conway,*
  836 f.3d 321 (3d Cir. 2016) .............................................. 33

*Graham v. Gagnon,*
  831 F.3d 176 (4th Cir. 2016)........................................... 22

*Gray-Hopkins v. Prince George's Cnty., Md.,*
  309 F.3d 224 (4th Cir. 2002)............................................. 2

*North Carolina ex rel. Hailey v. Westmoreland,*
  267 F. Supp. 2d 497 (M.D.N.C. 2003)............................. 52

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982)................................................. 19, 20

*Henry v. Purnell,*
  501 F.3d 374 (4th Cir. 2007)............................................. 8

*Hovatter v. Widdowson,*
  No. CCB-03-2904, 2006 WL 890713, at *10 (D.
  Md. Mar. 29, 2006), *aff'd,* 228 F. App'x 344,345
  (4th Cir. 2007) .................................................................. 62

*Hovatter v. Widdowson,*
  228 F. App'x 344 (4th Cir. 2007) .................................... 62

*Hupp v. Cook,*
  931 F.3d 307 (4th Cir. 2019)........................................... 22

*Iko v. Shreve,*
  535 F.3d 225 (4th Cir. 2008)............................................. 2

*Illinois v. Fisher,*
  540 U.S. 544 (2004)......................................................... 50

*J.D.B. v. N.C.,*
  564 U.S. 261 (2011)......................................................... 55

*Jackson v. Carin*,
128 F.4th 525 (4th Cir. 2025) ..................................... 28, 35

*Jackson v. Pantazes*,
810 F.2d 426 (4th Cir.1987)............................................. 53

*Jean v. Collins*,
221 F.3d 656 (4th Cir. 2000)........................................... 60

*Jenkins v. Medford*,
119 F.3d 1156 (4th Cir. 1997)........................................... 2

*Johnson v. Jones*,
515 U.S. 304 (1995)......................................................... 2

*Jones v. Kearns*,
120 N.C. App. 301, 462 S.E.2d 245 (1995) ...................... 63

*Kisela v. Hughes*,
584 U.S. 100 (2018)........................................................ 57

*Knibbs v. Momphard*,
30 F.4th 200 (4th Cir. 2022) ...................................... 2, 64

*Lewis v. Caraballo*,
98 F.4th 521 (4th Cir. 2024) ........................................... 18

*Loftin v. City of Prentiss, Miss.*,
33 F.4th 774 (5th Cir. 2022) ........................................... 33

*Lovitt v. True*,
403 F.3d 171 (4th Cir. 2005)........................................... 51

*Maciariello v. Sumner*,
973 F.2d 295 (4th Cir. 2012)........................................... 19

*Malley v. Briggs*,
475 U.S. 335 (1986).............................................. 19, 30, 31

*Mason v. Brathwaite*,
432 U.S. 98 (1977).......................................................... 62

*Massey v. Ojaniit*, 759 F.3d 343 (4th Cir. 2014) ............ 32, 33

*Mathis v. Town of Waynesvill*e,
    No. 1:09-cv-296, 2009 WL 6067335
    (W.D.N.C. Dec. 4, 2009) (unpublished) ........................... 46

*McKinney v. Richland Cnty. Sheriff's Dep't*,
    431 F.3d 415 (4th Cir. 2005)..................................... 31, 35

*McPherson v. Baltimore Police Dep't*,
    No. CV SAG-20-0795, 2023 WL 5433011
    (D. Md. Aug. 3, 2023)................................................ 23, 44

*McPherson v. Patton*,
    No. 23-1938, 2024 WL 4490631
    (4th Cir. Oct. 15, 2024) ............................................ 23, 44

*Messerschmidt v. Millender*,
    565 U.S. 535 (2012)........................................................... 30

*Miller v. Prince George's County, MD*,
    475 F.3d 621 (4th Cir. 2007)............................................. 32

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)................................................... 1, 2, 8

*Murdock v. Thompson*,
    No. 20-6278, 2022 WL 17352171
    (4th Cir. Dec. 1, 2022) (unpublished) .............................. 49

*Napue v. People of State of Ill.*,
    360 U.S. 264 (1959).......................................................... 58

*Hensley on behalf of North Carolina v. Price*,
    876 F.3d 573 (4th Cir. 2017).................................. 2, 18, 64

*Owens v. Baltimore City State's Attorneys Office*,
    767 F.3d 479 (2014) ......................................................... 37

*Paez v. Mulvey*,
    915 F.3d 1276 (11th Cir. 2019)........................................ 33

*Park v. Shiflett,*
 250 F.3d 843 (4th Cir. 2001).............................................21

*Pearson v. Callahan,*
 555 U.S. 223 (2009)..................................................19, 32

*Pegg v. Herrnberger,*
 845 F.3d 112 (4th Cir. 2017).............................................18

*Petrillo v. Barnes-Jones,*
 291 N.C. App. 62, 894 S.E.2d 772 (2023) ........................63

*Porterfield v. Lott,*
 156 F.3d 563 (4th Cir. 1998).............................................23

*Quarles v. Weeks,*
 815 F. App'x 735 (4th Cir. 2020) .....................................35

*Quinn v. Zerkle,*
 111 F.4th 281 (4th Cir. 2024) ..........................................52

*Rambert v. City of Greenville,*
 107 F.4th 388 (4th Cir. 2024) ..........................................21

*Randall v. Prince George's Cnty., Md.,*
 302 F.3d 188 (4th Cir. 2002)......................................52, 53

*Rehberg v. Paulk,*
 566 U.S. 356 (2012)..................................................41, 42

*Ridpath v. Bd. of Governors Marshall Univ.,*
 447 F.3d 292 (4th Cir. 2006).............................................20

*Robertson v. Elliott,*
 315 F. App'x 473 (4th Cir. 2009) ................................59, 60

*Safar v. Tingle,*
 859 F.3d 241 (2017) ........................................................47

*Sharpe v. Bell,*
 593 F.3d 372 (4th Cir. 2010).............................................29

*Smith v. Munday,*
848 F.3d 248 (4th Cir. 2019)...............................................23

*Smith v. Reddy,*
101 F.3d 351 (4th Cir.1996)...............................................23

*State v. Sharpe,*
344 N.C. 190, 473 S.E.2d 3 (1996)...................................14

*Street v. Surdyka,*
492 F.2d 368 (4th Cir. 1974)......................................24, 25

*Tarlton v. Sealey,*
No. 5:15-cv-451, 2018 WL 1129976
(E.D.N.C. Mar. 1, 2018) ......................................................41

*Torchinsky v. Siwinski,*
942 F.2d 257 (4th Cir. 1991)...................................*passim*

*U.S. v. Bagley,*
473 U.S. 667 (1985)............................................................37

*U.S. v. Beckham,*
325 F.Supp.2d 678 (E.D. Va. 2004) ................................30

*U.S. v. Blankenship,*
19 F 4th 685 (4th Cir. 2021) .............................................37

*U.S. v. Higgs,*
663 F. 3d 726 (4th Cir 2011)............................................37

*U.S. v. Humphries,*
372 F.3d 653 (4th Cir. 2004)............................................25

*U.S. v. Orozco,*
41 F 4th 403 (4th Cir. 2022) .............................................27

*U.S. v. Wilson,*
901 F.2d 378 (4th Cir. 1990).............................................37

*United States v. Chavez,*
894 F.3d 593 (4th Cir. 2018)............................................58

*Wadkins v. Arnold,*
   214 F.3d 535 (4th Cir. 2000) ........................... 23, 27, 44, 46

*Warren v. Braswell,*
   No. 7:24-cv-233-FL, 2024 WL 3678360
   (E.D.N.C. Aug. 2, 2024) ...................................................... 44

*Washington v. City of Chicago,*
   98 F.4th 860 (7th Cir. 2024) ............................................. 32

*Washington v. Wilmore,*
   407 F.3d 274 (4th Cir. 2005) ............................................. 62

*White v. Pauly,*
   580 U.S. 73 (2017) .................................................... *passim*

*Wilcox v. City of Asheville,*
   222 N.C. App. 285, 730 S.E.2d 226 (2012) ...................... 64

*Williams v. Hepting,*
   844 F.2d 138 (3d Cir. 1988) ............................................. 41

*Zahrey v. Coffey,*
   221 F.3d 342 (2d Cir.2000) .............................................. 59

## Statutes

28 U.S.C. § 1331 .......................................................................1

28 U.S.C. § 1343(a) ...................................................................1

28 U.S.C. § 2107(a) ...................................................................3

42 U.S.C. § 1983 ............................................................. *passim*

N.C. Gen. Stat. § 7B-2000 ..................................................... 55

N.C. Gen. Stat. § 7B-2101 ..................................................... 55

**Rules**

Fed. R. App. P. 4(a)(1) .............................................................3

**Other Authorities**

60A Am. Jur. 2d Perjury § 132 (1988) ...................................42

## JURISDICTIONAL STATEMENT

### I.    Federal Court Jurisdiction

Original jurisdiction exists because, under 28 U.S.C. § 1331, this is a civil action arising under the Constitution and laws of the United States, including alleged violations under 42 U.S.C. § 1983. Jurisdiction also exists under 28 U.S.C. § 1343(a). (J.A. 0369).

### II.   Appellate Jurisdiction

#### A.    This Court Has Jurisdiction to Consider Defendants' Appeal Under the Collateral Order Doctrine.

This action was filed in the United States District Court for the Eastern District of North Carolina. (J.A. 0199). The Court has jurisdiction of this interlocutory appeal under the collateral order doctrine set forth in *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), which holds that government officials may pursue an immediate interlocutory appeal from a denial of qualified immunity. *See also Danser v. Stansberry*, 772 F.3d 340, 344–45 (4th Cir. 2014). David Ricky Best ("Best"), Carolyn Melvin ("Melvin") (Best and Melvin are collectively, "Detectives"), and Jeffrey Shrock ("Shrock") (Best, Melvin, and Shrock are collectively, "Defendants") are appealing from the denial of their

qualified immunity defense. This qualified immunity defense, which is appealable under the collateral order doctrine, is based on a legal determination that the rights Plaintiff/Appellee Montoyae Dontae Sharpe ("Plaintiff") alleges to have been violated were clearly established at the time of his arrest in 1994, conviction in 1995, MAR hearing in 1997, and alleged destruction of evidence in 2004. *Mitchell*, 472 U.S. at 530; *Johnson v. Jones*, 515 U.S. 304, 304–05 (1995); *Jenkins v. Medford*, 119 F.3d 1156, 1159, n.2 (4th Cir. 1997); *Iko v. Shreve*, 535 F.3d 225, 234 (4th Cir. 2008) ("[W]e have jurisdiction over a claim that there was no violation of clearly established law accepting the facts as the district court viewed them.") (quotation omitted); *Behrens v. Pelletier*, 516 U.S. 299, 307 (1996).

Detectives are also appealing from the denial of their public official immunity defense set forth in their respective summary judgment motions, which is appealable under the collateral order doctrine. *See*, *e.g.*, *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022); *Hensley on behalf of N. Carolina v. Price*, 876 F.3d 573, 587 n.9 (4th Cir. 2017); *Gray-Hopkins v. Prince George's Cnty., Md.*, 309 F.3d 224, 233 (4th Cir. 2002).

**B.    This Appeal is Timely.**

The District Court's Order was entered on February 11, 2025 (J.A. 2772-2790), and Defendants timely filed their respective Notices of Appeal on February 13, 2025. (J.A. 2791-2797). Accordingly, Defendants' appeal was timely filed under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1).

## STATEMENT OF THE ISSUES

I.    Did the District Court err in denying summary judgment to Defendants in their individual capacities on the basis of qualified immunity as to Plaintiff's claims under 42 U.S.C. § 1983?

II.   Did the District Court err in denying summary judgment to Detectives in their individual capacities on the basis of public official immunity as to Plaintiff's claim for gross and reckless negligence under North Carolina law?

## STATEMENT OF THE CASE

**A.    Procedural History**

This case arises out of the conviction and incarceration of Plaintiff for the February 11, 1994 murder of George Radcliffe ("Radcliffe"). (J.A. 0624-0629, 2460-2467, 2511). On April 7, 1994, witness Charlene Johnson ("Johnson") told Detectives she was in the area of the homicide and witnessed Plaintiff shoot Radcliffe. (J.A. 2490-2491). Johnson's

statement was presented to a Pitt County Magistrate Judge who issued a warrant for Plaintiff's arrest on April 7, 1994. (J.A. 1903). A Grand Jury Indictment charging Plaintiff with the homicide was issued on April 18, 1994. (J.A. 1910). Johnson's statement implicating Plaintiff in the homicide amounted to probable cause as confirmed by the Magistrate. Johnson's statement is central to this appeal.

Plaintiff was tried and convicted of first-degree murder in July 1995. (J.A. 2330-2334). In August 2019, a Superior Court Judge entered an order vacating Plaintiff's conviction on grounds of newly discovered evidence. (J.A. 0406). The Superior Court vacated Plaintiff's conviction, released him from custody, and remanded the case for a new trial. (J.A. 0406). The Pitt County District Attorney chose not to retry Plaintiff and dismissed the charges. (J.A. 0406).

Plaintiff filed this action against the City of Greenville ("City"), Best, and Shrock on December 20, 2021. (J.A. 0037-0088). Plaintiff filed a second action on July 29, 2022, where he named Melvin as a defendant. (J.A. 0143-0172). The action against Melvin was consolidated with the initial action on November 1, 2022. (J.A. 0194-0195). Plaintiff filed a Consolidated Complaint on November 12, 2022. (J.A. 0199-0261).

Plaintiff's claims against Detectives[1] arise out of their investigation into the Radcliffe murder, which was done on behalf of the Greenville Police Department ("GPD"). (J.A. 0624-0646, 2468-2488, 2490-2500). Plaintiff's claims against Shrock arise out of his role as a GPD patrol officer and his interactions with Johnson. Johnson was one of the State's witnesses at Plaintiff's criminal trial. (J.A. 1954-2004). Upon the conclusion of the discovery period, Plaintiff and Defendants moved for summary judgment. On November 6, 2024, the District Court granted Plaintiff's Motion to File an Amended Consolidated Complaint and allowed the parties to file dispositive motions within twenty-one (21) days of the filing of the Amended Complaint. (J.A. 0361-0365).

On November 7, 2024, Plaintiff filed the operative Second Amended Complaint, which asserted 19 counts: Violation of Section 1983 (Counts I–XI and XII); Failure to Train and Supervise (Count X), and state law claims against all parties (Counts XI, XII, and XIII–XIX). (J.A. 0366-0442). Plaintiff and Defendants thereafter, again, moved for summary judgment. (J.A. 0443-0445, 0611-0614, 2388-2390, 2418-2420, 2444-

---

[1] Melvin resigned from the GPD effective December 28, 1995. (J.A. 2340).

2446). The District Court entered an Order (the "Order") on February 11, 2025, denying Plaintiff's motion and granting Defendants' motions in part and denying them in part. (J.A. 2772-2790). Specifically, the District Court granted the City's motion for summary judgment, in part, entering judgment in the City's favor for the federal claims finding that "Plaintiff has simply failed to create a genuine issue of material fact as to whether this is the appropriate case to send a *Canton* exception to the jury." (J.A. 2786). The Order left all of Plaintiff's federal claims pending against Defendants under 42 U.S.C. § 1983:

1. Alleged knowingly or recklessly using false evidence to obtain Plaintiff's arrest and conviction (Detectives – Counts I and II);

2. Alleged failure to intervene that resulted in the denial of air criminal proceedings (Melvin – Count III);

3. Alleged institution of criminal charges without probable cause (Detectives – Count IV);

4. Alleged failure to investigate (Detectives – Count V);

5. Alleged concealment of exculpatory and impeachment evidence (Best and Shrock – County VI);

6. Alleged knowingly or recklessly using false evidence in denying Plaintiff due process and access to the courts (Best and Shrock - Count VII);

7. Alleged deprivation of Plaintiff of due process and access to the courts (Best - Count VII); and

8. Alleged bad faith destruction of evidence (Best – Count IX).

(J.A. 2778-2783, 2789). The Order also left claims pending against Detectives and the City under North Carolina state law for gross and reckless negligence. (J.A. 2787-2788).

Defendants timely appealed the Order on February 13, 2025. (J.A. 2791-2797). Defendants seek interlocutory review of the denial of their qualified immunity defenses as to the Section 1983 claims against them. Detectives also seek interlocutory review of the denial of their public official immunity defenses as to the gross and reckless negligence claim under North Carolina law. (J.A. 2791-2797).

In its Order, the District Court determined the following broadly defined rights were clearly established:

a. Arresting a suspect without probable cause in 1994;

b. Obtaining a conviction based on the use of falsified evidence in violation of the Fourteenth Amendment;

c. Failure by the government to correct such false evidence when it appears;

d. Bad faith suppression of exculpatory evidence by police officers; and

e. Failure to adequately investigate the crime, when done in bad faith or in order to shield other wrongful acts.

(J.A. 2780-2783). However, Defendants contend the District Court erred in finding the above rights were, at that time, clearly established because the District Court only examined the alleged rights at a general level and failed to particularize the alleged rights to the facts of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017). The Supreme Court requires "a case where an officer acting under similar circumstances as [Defendants] was held to have violated the [above rights]" and not a case interpreting the rights at a "general level." *Id.*

Plaintiff filed a Motion to Certify Defendants' Appeals as Frivolous, which was denied by the District Court on March 9, 2025. (J.A. 2798-2800). The District Court has entered an order staying all proceedings in this lawsuit pending resolution of this appeal. (J.A. 2798-2800).

## B. Factual Background

This case comes to this Court as an interlocutory appeal to the denial of Defendants' request for summary judgment on qualified immunity and Detectives' request for summary judgment on public official immunity. As such, this Court may consider only whether the District Court erred in deciding a question of law, *Henry v. Purnell*, 501 F.3d 374, 476 (4th Cir. 2007) (*citing Mitchell*, 472 U.S. at 530), or "an

ostensibly fact-bound issue that may be resolved as a matter of law (such as whether facts that are undisputed or viewed in a particular light are material to the immunity calculus)." *Al Shimari v. CACI Int'l, Inc.*, 679 F.3d 205, 221–222 (4th Cir. 2012). Accordingly, Defendants summarize here the undisputed facts as presented by the District Court's Order (J.A. 2773-2777).

### 1.      Detectives' Investigation of Radcliffe Homicide

On February 11, 1994, Radcliffe[2] was found shot to death in his pickup truck around 9:15 p.m. in Greenville, North Carolina. The GPD responded to and investigated the shooting that night. Specifically, Officer Kevin Jones spoke to witnesses Tony Johnson and Wilber Mercer (also known as Marciana) and officers conducted a sweep of the street looking for physical evidence.

Radcliffe's autopsy determined that a bullet entered his upper left arm, traveled across his chest, and lodged in his right arm. On February 14, 1994, Melvin, a GPD detective, interviewed Wilber Mercer ("Mercer")

---

[2]      The Order referred to the victim, George Radcliffe, as "Radcliff." However, the undersigned will refer to his legal name herein, which is "Radcliffe."

and Martha Stewart ("Stewart") at the police station. Melvin's interview notes reflect that Mercer indicated he was with Radcliffe shortly before the murder trying to help him buy powder cocaine. Mercer indicated he intended to rip off Radcliffe. Mercer also indicated he had left his jacket in Radcliffe's truck (as collateral), which was discovered after the shooting with blood on it. The notes from Stewart's interview reflect that she told Melvin that while she was walking down the street, she saw two black males whistle at Radcliffe's truck and then approach the truck; about a minute later, when Stewart was back inside her home, she heard a gunshot.

On February 15, 1994, Best, a GPD detective, was assigned to the Radcliffe investigation.[3] It is disputed whether Melvin or Best acted as the lead or *de facto* lead investigator on the case and made decisions as to which witnesses to interview and which leads to follow. However, that factual dispute is not relevant to the qualified immunity or public official immunity analysis. On February 15 and 16, 1994, Melvin requested Crime Stopper Coverage and interviewed Radcliffe's wife, Tricia

---

[3]     Best retired from the Greenville Police Department in 2003. (J.A. 2650).

Radcliffe. Shrock, a GPD officer, contends on or about February 17, 1994, he met Johnson near the scene of Radcliffe's murder and that she later told him she had witnessed a man named Dontae shoot the victim.

On April 7, 1994, Detectives interviewed Johnson at the GPD during which *Johnson stated that she was in the area and had witnessed Plaintiff shoot Radcliffe*. Johnson was thirteen years old at the time of Radcliffe's murder and knew Plaintiff. *Johnson wrote out a statement during the interview in which she implicated Plaintiff and Mark Joyner* ("Joyner") *in the murder, specifically stating that Plaintiff was the shooter*. The statement read:

> "On February 11, 1994, I was walking down 14th on my way to the Lucky Spot, I stop at the stop sign. And I so (sic) Donta and a white male and Mark Joy. Donta was about to sale that white male a rock but he only had 18.00 Donta said I cant do it you have to have the money straight up and the white male said fuck you man. Donta push him and then he pulled out a gun and shot him. Charlene Natasha Johnson 4 7, 94 1:30pm [sic]."

(J.A. 2491). At 1:34, Johnson provided a second statement:

> "Also Donta move the truck and ran it in the fence and mark and Donta pick the white male up and, from where he got shot, put him in the truck and Donta throw the keys and the gun somewhere and Mark [illegible] split up and meet each

> other and got into a red escort. Charlene Natasha Johnson 4-7-94 1:34, pm [sic]."[4]

(J.A. 2491). After Johnson provided her statement implicating Plaintiff in the murder, this evidence was presented to Magistrate K. Hall who subsequently found probable cause and issued an a warrant for Plaintiff's arrest. On April 18, 1994, a grand jury indicted Plaintiff for the murder. Plaintiff's cousin, Joyner, was also arrested in relation to the murder and eventually pled guilty to accessory after the fact for his role in the homicide.

Detectives questioned Plaintiff after his arrest. Plaintiff indicated he had been with Karsten Robinson and his girlfriend, Kizzie Paige ("Paige"), on the night of Radcliffe's murder and that he owned a .45 caliber gun, which had been stolen (Radcliffe was murdered with a .45 caliber gun). Plaintiff denied any involvement in Radcliffe's murder. Plaintiff's alleged alibi witnesses were not interviewed by Detectives.

On the night of Plaintiff's arrest, Johnson was assaulted by five women, including Paige. Johnson was taken to a safe house in

---

[4] The District Court did not include the verbatim language of Johnson's written statement as shown above. However, language used in the handwritten statement is not disputed in this matter. (J.A. 2491).

Wilmington after the assault. Based on her eyewitness statement and testimony, she was later given $500.00 through the Crime Stopper program.

### 2. Plaintiff's Criminal Trial

Plaintiff was represented by local attorney Cherry Stokes in his criminal case. The trial took place in July 1995 in Pitt County Superior Court with Judge Richard Parker presiding. Johnson testified at the trial and maintained she witnessed Plaintiff and Joyner murder Radcliffe. Beatrice Stokes ("Stokes") also testified after she allegedly approached Best and claimed to have witnessed Radcliffe's murder in May of 1994. Stokes testified she had seen Plaintiff, Marciana, "Lisa", Joyner, and "Candice" or "Candy", along with Radcliffe, all standing near Radcliffe's truck when Plaintiff shot Radcliffe. Detectives also testified at the trial. The firearm used to kill Radcliffe had not been recovered at the time of the trial. After the State rested, Plaintiff's counsel moved to strike Johnson's testimony, which was denied. Plaintiff only called two alibi witnesses, family members Patricia Ward and Patricia Hicks. Plaintiff did not call any alibi witness he had mentioned in his April 7, 1994 statement to Best. The jury returned a unanimous verdict of guilty on

the charge of first-degree murder and Plaintiff was sentenced to life imprisonment. Plaintiff appealed. The Supreme Court affirmed his conviction and sentence. *State v. Sharpe*, 344 N.C. 190, 473 S.E.2d 3 (1996).

### 3.    Post-Trial

Not long after the trial, Johnson allegedly told Cherry Stokes' paralegal that she had not told the truth during the trial. Johnson stated that she had not been there when Radcliffe was killed, that Best had given her and her family a lot of gifts, and that Stokes also had not told the truth during the trial. Johnson later told the paralegal of Plaintiff's appellate attorney that everything she had said in the trial was a lie. On September 10, 1996, Johnson signed an affidavit recanting her trial testimony.

After Johnson recanted her trial testimony, Plaintiff filed a Motion for Appropriate Relief ("MAR") in which he sought to vacate his conviction. An evidentiary hearing was held on December 11, 1997, and Best, Shrock, and Johnson testified at the hearing. Best and Shrock testified about their interactions with Johnson before and after she gave her statement implicating Plaintiff. Based upon the evidence presented,

the presiding judge was "reasonably well satisfied that Johnson testified truthfully at the trial of [Sharpe]". Additional litigation challenging Plaintiff's conviction followed the denial of his 1997 MAR, culminating with the vacatur of his conviction on August 22, 2019.

## SUMMARY OF ARGUMENT

This Court should reverse the District Court's denial of Defendants' summary judgment motions for the following reasons.

*First*, Detectives are entitled to qualified immunity as to the Fourth Amendment claims. The undisputed facts demonstrate that probable cause existed as a matter of law to arrest Plaintiff. The District Court's conclusion that a reasonable jury could determine the officers arrested Plaintiff without probable cause constitutes reversible error. Plaintiff does not have a constitutional right to not have Detectives present Johnson's statement to a magistrate. In fact, the evidence demonstrates Johnson's statement was supported by the witness statements contemporaneously known to Detectives. Accordingly, this Court should conclude that Detectives are entitled to qualified immunity as to Plaintiff's Fourth Amendment claims because Plaintiff failed to prove a constitutional right was violated by Detectives or that the constitutional

right was clearly established on April 7, 1994, when a warrant was issued for Plaintiff's arrest.

*Second*, Defendants are entitled to qualified immunity as to Counts I–IX because Plaintiff has not established that Defendants' alleged misconduct violated constitutional rights that were clearly established between 1994 and 1995 when Plaintiff was arrested and tried. In 1995, there was no controlling legal precedent to inform a North Carolina law enforcement officer that transporting a juvenile witness to a psychiatric facility was exculpatory evidence or that investigators were required to investigate the mental health of a witness prior to making an arrest. Similarly, no precedent existed requiring investigators to confront witnesses with inconsistencies in their statement, interview a plaintiff's alibi witnesses, or take subsequent investigative steps to further corroborate a witness's statement prior to making an arrest. Further, it was not clearly established that a retired law enforcement officer had a duty to preserve post-conviction evidence or to provide information to attorneys assisting with post-conviction proceedings in 2004 and 2012 respectively. The legal authority Plaintiff cited below relies on a high level of generality in cases dissimilar to this one. Accordingly, Plaintiff

has not demonstrated a violation of his clearly established rights, much less explained how Defendants would have been put on notice that such rights existed between 1994–1995, 2004, and 2012.

*Third*, as to Best and Shrock, the record supports a finding that testimonial immunity prohibits all Plaintiff's claims related to testimony they gave at the 1997 MAR hearing. It is undisputed that neither Best nor Shrock spoke to the district attorney. Accordingly, the District Court's conclusion that Best and Shrock did not reveal the disputed allegations in this case constitutes reversible error. In particular, the District Court failed to properly apply the principle that witnesses are immune from civil liability for both their sworn testimony and the preparation thereof.

*Fourth*, Detectives are entitled to public official immunity as to Count XII because probable cause existed for Plaintiff's arrest as a matter of law, and they did not violate clearly established law.

Based on the foregoing, this Court should reverse the denial of qualified immunity and public official immunity and enter judgment in favor of all Defendants.

## STANDARD OF REVIEW

This Court reviews the district court's denial of qualified immunity *de novo*. *See Durham v. Jones*, 737 F.3d 291, 298 (4th Cir. 2013). For purposes of its review, this Court accepts the facts as the district court articulated them when it determined whether summary judgment was appropriate, and then determines whether, based on those facts, a reasonable person in the position of the officer seeking immunity could have believed he or she was acting in conformity with clearly established law at the time. *See Hensley*, 876 F.3d at 579 (*quoting Pegg v. Herrnberger*, 845 F.3d 112, 117 (4th Cir. 2017); *Lewis v. Caraballo*, 98 F.4th 521, 529 (4th Cir. 2024) ("[I]f we take the facts as the district court gives them to us, and we view those facts in the light most favorable to the plaintiff, is the defendant still entitled to qualified immunity?") (citations omitted).

This Court also reviews the district court's denial of public official immunity de novo. *See Hensley*, 876 F.3d at 579.

# ARGUMENT

## I. Defendants are Entitled to Qualified Immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The doctrine protects officers from suit in cases involving "gray areas" of constitutional rights or the violation of such asserted rights. *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 2012). The qualified "immunity shield is necessarily more protective than is the defense on the merits." *Torchinsky v. Siwinski*, 942 F.2d 257, 261 (4th Cir. 1991). Qualified immunity shields officials from money damages unless (1) the official violated a statutory or constitutional right and (2) "every reasonable official would have understood" the right was "clearly

established" at the time of the alleged violation. *See Harlow*, 457 U.S. at 818; *Ashcroft*, 563 U.S. at 741 (emphasis added) (internal quotations omitted).

Notably, "clearly established law should not be defined at a high level of generality." *White*, 580 U.S. at 79 (citation omitted). Rather, "a constitutional right is clearly established when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right" and the right is "dictated by controlling authority or a robust consensus of cases of persuasive authority[.]" *Doe v. Charlotte Mecklenburg Bd. of Educ.*, No. 23-1182, 2024 WL 3565522, at *6 (4th Cir. July 29, 2024) (unpublished) (citing *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006)). "[C]learly established law must be 'particularized' to the facts of the case." *White*, 580 U.S. at 79 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Otherwise, "plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *See id.* (citations omitted) (cleaned up).

**II. The District Court Erred in Denying Summary Judgment to Detectives on Plaintiff's Fourth Amendment Claims Because There Was No Clearly Established Constitutional Right to Not Present Johnson's Statement to a Magistrate.**

### A. Standard of Review

This Court has jurisdiction to consider the objective reasonableness of Detectives' conduct, including whether probable cause existed for Plaintiff's arrest. *See Rambert v. City of Greenville*, 107 F.4th 388, 406–07 (4th Cir. 2024) ("To conclude, the defendants' arguments on appeal involve the legal issues of the objective reasonableness of [the officer's conduct and his entitlement to qualified immunity. [ ] [W]e have jurisdiction over those issues[.]") Whether probable cause exists, under a certain set of facts, is a question of law. *See, e.g., Park v. Shiflett*, 250 F.3d 843, 849–50 (4th Cir. 2001) ("whether given facts constitute probable cause is a legal determination which is reviewed de novo"); *Gilliam v. Sealey*, 932 F.3d 216, 234 (4th Cir. 2019) (reviewing district court's denial of summary judgment on probable cause as a matter of law).

### B. Probable Cause Overview

The Supreme Court has explained "[t]o determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed

from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (internal quotation marks and citation omitted). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a 'fluid concept' that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.* As this Court knows, "[a]n officer has probable cause to justify an arrest when facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." *English v. Clarke*, 90 F.4th 636, 646 (4th Cir. 2024) (cleaned up) (internal quotation marks and citation omitted).

This Circuit applies an *objective* test to determine whether a reasonably prudent officer with the information available to the officer *at the time* would have thought probable cause existed for the arrest. *See Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (emphasis added) (citing *Graham v. Gagnon*, 831 F.3d 176, 185 (4th Cir. 2016)). Probable cause "requires only a probability or substantial chance of criminal activity." *Wesby*, 583 U.S. at 57 (citation omitted). Thus, probable cause is not a

high bar and requires substantially less evidence than is necessary to convict. *See*, *e.g.*, *Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998).

A court does "'not examine the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause.'" *Gilliam*, 932 F.3d at 234 (quoting *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2019)). Rather, "an officer [ ] has probable cause even when a witness's statement contradicts other known facts in the record[.]" *See McPherson v. Baltimore Police Dep't*, No. CV SAG-20-0795, 2023 WL 5433011, at *26 (D. Md. Aug. 3, 2023), *appeal dismissed sub nom. McPherson v. Patton*, No. 23-1938, 2024 WL 4490631 (4th Cir. Oct. 15, 2024) (citation omitted)). Moreover, reasonable officers need <u>not</u> "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky*, 942 F.2d at 264. "Although an officer may not disregard readily available exculpatory evidence of which he is aware, the failure to pursue a potentially exculpatory lead is not sufficient to negate probable cause." *Wadkins v. Arnold*, 214 F.3d 535, 541 (4th Cir. 2000) (citing *Smith v. Reddy*, 101 F.3d 351, 357 (4th Cir.1996)).

Importantly, "where a law enforcement officer acts pursuant to a warrant, the critical question is whether the officer could have

reasonably thought there was probable cause to seek the warrant." *See id.* at 539. While it will "always be possible to contend in court that an arresting officer might have gathered more evidence, [ ] judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause." *Torchinsky*, 942 F.2d at 264 ("We encourage law enforcement officers to seek warrants because magistrates from their detached perspective serve as the essential 'checkpoint between the Government and the citizen.'") (quotation omitted). *See Baker v. McCollan*, 443 U.S. 137, 142–46 (1979) (holding that determination of probable cause by detached judicial officer that complies with Fourth Amendment constitutes all of the process due required to constitutionally detain an accused pending trial). As such, a detective is not "liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that the officer misled or pressured the prosecution." *Evans v. Chambers*, 703 F.3d 636, 648 (4th Cir. 2012) (cleaned up) (quotation omitted).

A seizure effected with probable cause is reasonable as a matter of law; thus, the existence of probable cause defeats a claim of "unreasonable seizure" under the Fourth Amendment. *See*, *e.g.*, *Street v.*

*Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974). Indeed, the Fourth Circuit has specifically rejected the argument that "probable cause means more than not, [more than] 50/50," and made it clear that "the probable cause standard does not require that the officer's belief be more likely true than false." *U.S. v. Humphries*, 372 F.3d 653, 660 (4th Cir. 2004).

## C. Plaintiff's Fourth Amendment claims fail as a matter of law because probable cause existed to arrest Plaintiff and therefore, Detectives did not violate a constitutional right.

Here, Detectives are not requesting the Court review disputed facts to determine whether probable cause existed. Rather, as the District Court made clear in its Order denying Plaintiff's Motion to Certify Defendants' Appeals as Frivolous, "[t]hat the Court has denied summary judgment on qualified immunity and public official immunity based upon disputed facts does not render the interlocutory appeals frivolous." (J.A. 2799). Accordingly, Appellants seek this Court to review the District Court's Order to determine the two prongs of qualified immunity: (1) whether Detectives violated a constitutional right to not seek an arrest warrant from the magistrate based on Johnson's statement; and

(2) whether the aforedescribed right was clearly established on April 7, 1994.

Under the first prong of the qualified immunity analysis, Plaintiff's Fourth Amendment rights were not violated as probable cause existed at the time of his arrest based on the totality of the circumstances. As noted by the District Court, it is *undisputed* that Johnson told Detectives she "was in the area and had witnessed Radcliffe's murder" and "wrote out a statement that day in which she implicated Sharpe and Joyner in the murder, specifically stating that Sharpe was the shooter." (J.A. 2775). Johnson provided this information in two separate statements related to the murder. The first statement (without corrections to spelling or punctuation) reads:

> On February 11, 1994 I was walking down 14th, on my way too Lucky Spot, I stop at the stop sign And I so Donta and a white male and Mark Joy. Donta was about to sale that white male a rock but he only had $18.00. Donta said I can't do it you have to have the money straight up and the white male said Fuck you man. Donta push him and then he pulled out a gun a shot him.

(J.A. 2491). The second statement, written four minutes after the first statement (without corrections to spelling and punctuation) reads:

> Also Donta move the truck a ran it in the field. And Mark and Donta pick the white male up [interlineated on the line above

26

– "from where he got shot"] put him in the truck and Donta throw the keys and the gun somewhere And Mark and Donta split up and meet each other and got into a red escort.

(J.A. 2491). The District Court acknowledged Johnson admitted to witnessing Plaintiff murder Radcliffe – the basis of Detectives' probable cause – but failed to analyze the adequacy of the undisputed portions of Johnson's statement.[5] (J.A. 2775).

Further, "[i]t is noteworthy that two different judicial officers in separate proceedings determined that [detectives] had demonstrated probable cause to support the arrest of [Plaintiff]." *Torchinsky*, 942 F.2d at 261. First, a neutral and detached magistrate determined probable cause existed for Plaintiff's arrest, which deserves "great deference" by this Court. (J.A. 1903). *See U.S. v. Orozco*, 41 F 4th 403, 407 (4th Cir. 2022) ("We afford initial probable cause determinations great deference when, as here, a neutral and detached magistrate finds probable cause to support a warrant.") (quotation omitted); *see also Wadkins*, 214 F.3d at 543 ("[T]here is simply no basis for a rule that would require law

---

[5] Importantly, Plaintiff's Complaint alleges Best interfered only with Johnson's second statement and does not allege any police involvement in her initial statement. (J.A 0376- 0378).

enforcement officers to take issue with or second-guess the considered judgments of . . . magistrates.") Simply put, Detectives had probable cause to support the warrant without the disputed second statement. *See Jackson v. Carin*, 128 F.4th 525, 534 (4th Cir. 2025) ("[A]s a general matter, the fact that a neutral magistrate or, in this case, commissioner, issued the arrest warrant is the clearest indication that the officers acted in an objectively reasonable manner.")

Second, while not judicial officers, a Grand Jury of twelve or more grand jurors in Pitt County unanimously returned a Bill of Indictment against Plaintiff for the murder of Radcliffe, which conclusively determines the existence of probable cause. (J.A. 1910). *See Durham*, 690 F.3d at 189 ("[T]he prosecution was plainly supported by probable cause, as conclusively established by the three indictments. It has long since been settled by the Supreme Court that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause.") (internal quotation marks and citations omitted); *Jackson*, 128 F.4th at 534 ("[T]he fact that a grand jury indicted an individual establishes the existence of probable cause.")

Third, like in *Durham*, it is undisputed that Melvin did not taint the grand jury process because Plaintiff was indicted by a Pitt County jury "before which Melvin did not even testify. [Best] was the only law enforcement officer to testify before the grand jury and, in that circumstance, [Melvin] could hardly have been the instrument of its misapprehension." (J.A. 0422, 1910). *See Durham*, 690 F.3d at 189. Therefore, the grand jury's probable cause determinations and its indictment were "the proximate cause of [Plaintiff]'s arrest and detention, which by operation of law constituted a reasonable seizure." *See id.*

The trial court, and this Court, also confirmed the reliability of Johnson's statement pursuant to motions for appropriate relief filed by Plaintiff in 1997 and 2001. (J.A. 0330-0335). *See Sharpe v. Bell*, 593 F.3d 372, 376 (4th Cir. 2010) ("Yet the MAR Court considered all this evidence and more, and specifically found . . . Johnson's recantation [was] not credible and that Johnson's original testimony at trial was[.]" . . . "The MAR court concluded that Johnson's recantation was untrustworthy after hearing from a dozen different witnesses on the matter, the district

court credited Johnson's recantation without hearing even from Johnson, let alone anyone else who could speak to the veracity of her statements.")

Moreover, the exception to the neutral magistrate warrant rule, which "allow[s] suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue[,]'" does not apply here. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Here, based on the first part of Johnson's statement alone, Detectives were justified to believe Plaintiff murdered Radcliffe and lacked any reason to believe Johnson was lying or did not accurately describe what she witnessed on February 11, 1994. *See*, *e.g.*, *U.S. v. Beckham*, 325 F.Supp.2d 678, 687 (E.D. Va. 2004) ("Because of this sensible principle, an eyewitness identification will constitute sufficient probable cause[.]") (citation omitted). Johnson's statement provided the correct location of the murder and identified Plaintiff as a drug dealer active in the area. (J.A. 0624-0629, 2491, 2774-2775). Critically, Johnson's statement aligned with the prior information provided by witnesses Stewart and Mercer. (J.A. 0630-0635, 2774). The statement correctly identified that *two* men were involved in the murder,

and it confirmed Radcliffe was seeking drugs. (J.A. 0634-0635, 2774-2775).

As this Court knows, the evidence giving rise to probable cause need not be sufficient to convict, or even iron-clad, but must be sufficient to cause a prudent person to believe that the suspect has likely committed a criminal offense. Here, Plaintiff not being interviewed before his arrest "does not negate probable cause," *McKinney v. Richland Cnty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005), because "[t]here are also numerous reasons why a reasonable police officer might choose not to interview a suspect prior to arrest." *Torchinsky*, 942 F.2d at 263. Further, unlike in *Gilliam* where this Court held officers lacked probable cause "based on . . . the age and intellectual disabilities of Appellees," Johnson had an IQ of 78 (compared to McCollum's IQ of 56)[6], was never formally diagnosed as intellectually disabled, and was not coerced into providing a confession. *Gilliam*, 932 F.3d at 234. Lastly, the "warrant application is [not] so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Malley*, 475 U.S. at 344–45.

---

[6]     "[A]ny score below a 69 indicates intellectual disability." *Gilliam*, 932 F.3d at 222.

Based on the foregoing, Detectives' actions in applying for the arrest warrants were reasonable under the circumstances, as probable cause existed to arrest Plaintiff as a matter of law. Therefore, Detectives did not violate a constitutional right by presenting Johnson's statement to a magistrate and satisfy the first prong of qualified immunity.

**D.     Plaintiff's Fourth Amendment claims also fail as a matter of law because the disputed parts of Johnson's statement are immaterial.**

The undisputed facts establish that investigators developed probable cause based on Johnson's initial statement, rendering her second, allegedly fabricated, statement immaterial. "[F]alse statements alone do not . . . run afoul of the Fourth Amendment . . . [t]o contravene the Constitution, the false statements or omissions must be must be material, that is, necessary to the finding of probable cause." *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014). Best influencing Johnson's second statement would not defeat probable cause. *See Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 628 (4th Cir. 2007), *abrogated on other grounds by Pearson*, 555 U.S. 223 ("if the . . . affidavit establishes probable cause [with the disputed second statement removed], no civil liability lies against the officer"); *see also*, *e.g.*, *Washington v. City of*

*Chicago*, 98 F.4th 860, 874–79 (7th Cir. 2024); *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 782 (5th Cir. 2022); *Paez v. Mulvey*, 915 F.3d 1276, 1287 (11th Cir. 2019); *Goodwin v. Conway*, 836 f.3d 321, 327 (3d Cir. 2016). As noted by the District Court, "Johnson stated that she was in the area and witnessed Radcliff[e]'s murder." Johnson's statement to detectives clearly amounts to probable cause. It would have been irresponsible for detectives to ignore that statement.

Furthermore, the arguments of Plaintiff's attorney at the criminal trial, along with the 2019 Order vacating his conviction, highlight the immateriality of Johnson's second statement. (J.A. 1918-2338). Johnson's second statement did not undermine Plaintiff's primary defense, which focused on the inconsistency between her initial statement and the physical evidence. (J.A. 1990, 2107-2108). Specifically, Plaintiff's attorney argued Johnson's first statement implied that Radcliffe was shot in the chest, contradicting the forensic findings. (J.A. 1986). *See Massey* at 355 ("Simply put, the central issue at trial was not [Plaintiff's attempted getaway after the shooting]. Rather, the prosecution's case focused on the in-court identifications made by both [Johnson] and [Stokes].") Importantly, Plaintiffs conviction was eventually overturned

based on Johnson's inconsistent statement *presented at trial* and not the statement provided to Detectives. (J.A. 0406) ("Mr. Sharpe's conviction [was vacated] based upon testimony by the medical examiner that the version of the shooting testified to by [Johnson] at trial was medically and scientifically impossible.") (quotation omitted). As such, the District Court's ruling should be reversed because the record does not support a finding that the alleged use of false evidence was material to this case and shows the evidence did not impact the Plaintiff's core defense at trial.

**E.    It was not clearly established on April 7, 1994, that Detectives could not seek an arrest warrant from a magistrate for Plaintiff's arrest based on Johnson's statement.**

Lastly, under the second prong of qualified immunity, a reasonable officer would not have known on April 7, 1994, that the right to *not* present Johnson's eyewitness account of the homicide to a neutral and detached magistrate was clearly established.[7] *See*, *e.g.*, *Evans*, 703 at 650 (explaining that officers' reliance on a witness statement they learned

_____

[7]    Notably, Best is not alleged to have accompanied Melvin when Johnson's statement was presented to the magistrate. Because Best did not seek the arrest warrant, Plaintiff's false evidence claim against him necessarily fails as a matter of law.

was false after the non-testimonial order affidavit was issued "does not defeat their reliance on the information when applying for the NTO."); *Quarles v. Weeks*, 815 F. App'x 735, 737 (4th Cir. 2020) ("Our review of the record demonstrates sufficient facts within [officer's] knowledge to establish probable cause. At the time [officer] obtained a warrant to arrest [plaintiff], [officer] knew that an eyewitness identified [plaintiff] as one of two perpetrators and that the homeowner placed [plaintiff] at the home two weeks before the break-in."); *McKinney*, 431 F.3d at 419 ("Even if we were to conclude that the warrant was not supported by probable cause, [the officer] would nonetheless be entitled to qualified immunity because the absence of probable cause would not have been evident to an objectively reasonable officer in these circumstances. Both a prosecutor and a neutral and detached magistrate independently reviewed the evidence and concluded that there was probable cause. A reasonable officer would not second-guess these determinations unless probable cause was plainly lacking, which it was not."); *Jackson*, 128 F.4th at 540 ("[Officer] [ ] reasonably responded to a serious public risk with the information he had received from fellow officers and that, in doing so, he was fulfilling his duty to efficiently and speedily investigate

a very serious crime, although in this case with some unwitting imperfection.")

Accordingly, because Detectives neither violated a constitutional right nor violated a clearly established constitutional right by seeking a warrant for Plaintiff's arrest on April 7, 1994, they are entitled to qualified immunity on Plaintiff's claims grounded in the Fourth Amendment, and this Court should reverse the decision of the District Court on this basis.

III.   **The District Court Erred in Denying Summary Judgment to Officers Best and Shrock as to Plaintiff's *Brady* Claims Because, in 1994, There Was No Clearly Established Right For A Defendant to Receive The Psychiatric Information of a Juvenile Witness.**

A.     **Plaintiff's *Brady* claim fails because the allegedly exculpatory material was reasonably available to Plaintiff through alternative sources.**

As a threshold matter, Plaintiff's claim against Best and Shrock for concealment of exculpatory evidence should be dismissed as the material information was disclosed at trial. To show that a police officer violated a criminal defendant's constitutional right by suppressing exculpatory evidence, the defendant must allege, and ultimately prove, that: (1) the evidence at issue was favorable to him; (2) the officer suppressed the

evidence in bad faith; and (3) prejudice ensued. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 479 (2014). Evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *U.S. v. Bagley*, 473 U.S. 667, 682 (1985). However, the "constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *U.S. v. Blankenship*, 19 F 4th 685, 692 (4th Cir. 2021). There is no *Brady* violation when the alleged exculpatory information is available to the accused from "a source where a reasonable defendant would have looked." *U.S. v. Wilson*, 901 F.2d 378, 380–81 (4th Cir. 1990); *see U.S. v. Higgs*, 663 F. 3d 726, 735 (4th Cir 2011) (stating there is no Brady violation "if the evidence is available to the defense from other sources or the defense already possesses the evidence").

The District Court places significant weight on the allegation that that Shrock transported Johnson to a psychiatric facility in 1994 and that Best was aware of this information and also concealed it. (J.A. 2782). However, at the 1995 trial, the jury heard Johnson testify about police

bringing her to a Greenville hospital. (J.A. 1966). Johnson stated, "[w]ell, I was cut up one night, and I went to hospital, Greenville hospital, and the police brought me there and they started talking to me." (J.A. 1966). Similarly, Stokes testified extensively to her drug use during the 1995 trial and admitted to using cocaine on a daily basis. (J.A. 2154-2155). There is no *Brady* violation when the alleged exculpatory information is available to the accused from "a source where a reasonable defendant would have looked." *Wilson*, 901 F.2d at 380–81; *see Higgs*, 663 F. 3d at 735. Johnson's trial testimony aligns with Shrock's recollection of the interaction and was known to the jury. (J.A. 1966-1967). Plaintiff's trial attorney could have asked Johnson follow-up questions regarding the details of police transporting her to the hospital but declined to do so. (J.A. 1968-2004). Therefore, Plaintiff had reasonable access to information related to Johnson's psychiatric stay from sources other than Best and Shrock.

Notably, there is no dispute that the District Attorney Clark Everett possessed medical records referencing Johnson's psychiatric stay and treatment related to her assault before the 1995 trial and placed them in "All Attny's Boxes." (J.A. 2546-2547). Indeed, the District

Attorney argued information related to Johnson was known when questioning Plaintiff's investigator at the 1995 trial. (J.A. 2210) (Q. [Investigator], isn't it true that the attorney and you both knew her name as [Johnson], the fact that she was the victim in this assault in 1994 *and it was all in the papers that she was a victim in the assault*? A. Actually I didn't know the name because I hadn't kept up with it, Clark.") If the District Attorney possessed the medical records related to Johnson's psychiatric stay and failed to produce them or the Plaintiff's legal team "didn't keep up with it", that is not the fault of Best and Shrock.

Plaintiff further contends that Best was required to disclose small amounts of cash he gave to Johnson for snacks during the year preceding trial.[8] However, Best's failure to disclose these nominal sums was not material as Johnson testified, at trial in 1995, that she received $500.00 in exchange for her testimony pursuant to the Crime Stopper program. (J.A. 1967). Johnson testified to receiving a much more substantial sum directly for testifying at trial, and therefore, Best's failure to disclose his

---

[8] Importantly, the alleged small amounts of cash and gifts were given after Johnson made her initial statement and are not alleged to have been offered to induce her original statement implicating Plaintiff in the murder of Radcliffe. (J.A. 0388-0389).

gift of snacks did not interfere with Plaintiff's ability to impeach Johnson for a financial motive and is immaterial.

**B.     A reasonable officer in 1994 would not have understood a juvenile's mental health treatment was discoverable evidence.**

Further, assuming *arguendo* that Plaintiff's constitutional rights were violated, which is denied, qualified immunity still applies as a reasonable officer could have still believed that Best and Shrock's conduct was lawful in 1994. No contemporary precedent establishes that Best and Shrock's actions were unlawful, which is significant because qualified immunity ensures that officers will be liable "only for 'transgressing bright lines.'" *Doe v. Broderick*, 225 F.3d 440, 453 (4th Cir. 2000). A reasonable officer in 1994 would not have understood that transporting a juvenile witness to the emergency room could constitute withholding exculpatory evidence or violating a defendant's constitutional rights. In short, a reasonable officer possessing the same information could have believed that Best and Shrock's conduct was lawful in not sharing information related to Johnson's psychiatric stay.

Since the record supports a finding that the alleged exculpatory information was reasonably available to the Plaintiff through alternative

sources, and that a reasonable officer in 1994 would not have recognized driving a juvenile witness to a mental health facility constituted exculpatory information, the District Court's ruling should be reversed.

## IV. The District Court Erred in Failing to Apply Testimonial Immunity to Count VII of Plaintiff's Amended Complaint.

Plaintiff alleges Best and Shrock fabricated evidence while testifying at the 1997 MAR hearing. (J.A. 0421-0424). Further, Plaintiff bases his concealment of exculpatory evidence claim exclusively on statements Shrock made while testifying at that hearing. (J.A. 0419-0421). The immunity of a testifying witness bars both those claims.[9] *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("the immunity of a trial witness sued under § 1983 . . . [is] absolute . . . with respect to any claim based on the witness' testimony"); *see also Williams v. Hepting*, 844 F.2d 138, 141–43 (3d Cir. 1988) (citing cases) (holding that preliminary hearing testimony is within the scope of witness absolute immunity). It is well established that witnesses are entitled to absolute immunity from

---

[9]    The Eastern District of North Carolina has previously granted officer defendants summary judgment under similar circumstances. *Tarlton v. Sealey*, No. 5:15-cv-451, 2018 WL 1129976, at *6 (E.D.N.C. Mar. 1, 2018).

civil liability under § 1983 for their testimony in a judicial proceeding. *See, e.g., Briscoe v. LaHue*, 460 U.S. 325, 341–43 (1983); *Brice v. Nkaru*, 220 F.3d 233, 239 n.6 (4th Cir. 2000); 60A Am. Jur. 2d Perjury § 132 (1988) (false testimony in a criminal action does not furnish a basis for a civil suit by the criminal defendant). Moreover, established Supreme Court precedent provides that absolute testimonial immunity "may not be circumvented by claiming that a [witness] conspired to present false testimony or to support any other § 1983 claim concerning the initiation or maintenance of a prosecution," which is precisely what Plaintiff improperly seeks to do here. *Rehberg*, 566 U.S. at 369. Therefore, the Order should be reversed and Plaintiff's claim for fabrication should be dismissed as it relates to the statements Best and Shrock made while testifying at the 1997 MAR hearing.

Plaintiff, further, attempts to circumvent this obvious impediment by alleging that Best and Shrock made false statements to District Attorney Clark Everett prior to the 1997 MAR hearing. However, even if the alleged conversation had taken place, absolute immunity would still prohibit Plaintiff's claim. In *Rehberg*, the Court stated:

> In the vast majority of cases involving a claim against a [ ]
> witness, the witness and the prosecution conducting an

investigation engage in proprietary activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony. We decline to endorse a rule of absolute immunity that is so easily frustrated.

*Id.* at 370. Therefore, Plaintiff's fabrication claim is prohibited, and the District Court erred when finding said right was clearly established. Nor was it clearly established that consulting with the district attorney before a hearing constituted a constitutional violation in 1997.

In sum, the District Court made a reversible error and Count VII of Plaintiff's claim should be dismissed because it is clearly prohibited by absolute immunity and not a clearly established right. Similarly, Count VI should be dismissed as it relates to Shrock because Plaintiff is improperly attempting to circumvent absolute immunity by exclusively using testimony to support his other § 1983 claim against Shrock.

## A. Detectives Are Entitled to Qualified Immunity on the Failure to Investigate Claim.

Under established Fourth Circuit precedent, there is no constitutional right to an "error-free investigation" of criminal charges, *Baker*, 443 U.S. at 146, or to have police officers investigate an alternate suspect. *Gilliam*, 932 F.3d at 240. Negligent failures to investigate do not violate the Fourteenth Amendment. *See Daniels v. Williams*, 474 U.S.

327, 336 (1986). Critically, "[o]fficers are not required to pursue and exhaust all potentially exculpatory leads and avenues of investigation before applying for a warrant." *Warren v. Braswell*, No. 7:24-cv-233-FL, 2024 WL 3678360, at *5 (E.D.N.C. Aug. 2, 2024) (citing *Wadkins*, 214 F.3d at 541).

Yet, the District Court's Order effectively allows an investigator's mistake or omission in an investigation – here, the failure to interview Plaintiff's alibi witnesses, take steps to corroborate Johnson's statement, or investigate Johnson's psychiatric illness – to be retroactively transformed into a Section 1983 constitutional violation. (J.A. 2781). The above proposition was not clearly established when Detectives investigated the Radcliffe murder over thirty years ago. *See*, *e.g.*, *McPherson*, 2023 WL 5433011, at *21 ("Police practices have evolved over time, and standard practices from the 1990s might be viewed with disapproval today.") Detectives could not have known in 1994 that they could be subjected to personal liability under Section 1983 because they exercised their judgement in using the finite time available to prioritize certain leads and investigative avenues over others.

While this Court held in *Gilliam* the right "not to be deprived of liberty as a result of the intentional, bad-faith withholding [or fabrication] of evidence by an investigating officer" was clearly established in 1983, that is not the alleged right before this Court. 932 F.3d at 24. Rather, the alleged rights before this Court include: (1) duty of a detective to corroborate a witness statement and confront witness regarding possible inconsistencies between statement and physical evidence; (2) duty of a detective to interview suspect's purported alibi witnesses; (3) duty of a detective to investigate the mental health and treatment of a witness; and (4) duty of a detective to wait more than three hours before arresting a suspect after an incriminating witness statement.

However, none of the alleged rights above were clearly established in 1994 for the reasons set forth below.

## B. Detectives were not required to investigate Plaintiff's alibi or alleged exculpatory leads.

First, requiring an officer to corroborate every witness statement contradicts this Court's holding in *Torchinsky*, whereby a police officer's "failure to pursue potentially exculpatory evidence was not in itself

sufficient to negate probable cause." 942 F.2d at 264. Second, "police are not required to conduct a trial before making an arrest," which is precisely what the District Court seeks to impose upon Detectives by faulting them for arresting Plaintiff the same day as they obtained Johnson's statement. *See Brice*, 220 F.3d at 239 n.5. Third, it is well established that "[a] subject of a criminal investigation does not have a constitutional right to have a criminal investigation performed in a desired manner[.]" *Mathis v. Town of Waynesville*, No. 1:09-cv-296, 2009 WL 6067335, at *4 (W.D.N.C. Dec. 4, 2009) (unpublished). Therefore, Detectives were not required to interview Plaintiff's alibi witnesses – importantly, alibi witnesses that Plaintiff did not call at his criminal trial – or confront Johnson regarding how her account allegedly contradicted some of the physical evidence. *See Wadkins*, 214 F.3d at 541 ("Reasonable law enforcement officers are not required to exhaust every potentially exculpatory lead or resolve every doubt about a suspect's guilt[.]"); *Torchinsky*, 942 F.2d at 263 (affirming qualified immunity for the officer who relied on the victim's statement despite the victim providing conflicting accounts of the attack).

Lastly, the failure to investigate claim fails because Detectives established probable cause as a matter of law prior to arresting Plaintiff, *supra*. According to this Court, a failure to investigate claim tests an officer's effort to establish probable cause *before* seeking an arrest warrant. *See Safar v. Tingle*, 859 F.3d 241, 246 (2017) (citing *Wadkins*, 214 F. 3d at 541); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) ("Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused"). Thus, in 1994, there was no clearly established obligation requiring the Detectives to take the investigatory steps identified by the District Court (J.A. 2781), which amounted to obtaining exculpatory evidence for Plaintiff's defense.

In sum, because the alleged right to an "adequate" investigation of exculpatory evidence was not clearly established during the investigation of the Radcliffe murder, Plaintiff's failure to investigate claim is barred by qualified immunity. This Court should reverse the decision of the District Court on this claim.

### C. In 1994, No Clearly Established Due Process Right Existed Based on the Misconduct Alleged by Plaintiff As to Best.

Plaintiff makes various due process allegations against Best as they relate to his conduct in the investigation including knowingly and recklessly using false evidence in obtaining a warrant for Plaintiff's arrest, concealing exculpatory evidence related to Johnson, depriving Plaintiff of access to the Courts in refusing to speak with his attorneys in 2012, and destroying evidence after his retirement in October 2003. For the reasons discussed below, all of Plaintiff's claims against Best are barred by qualified immunity as a reasonable officer would not have understood Best was acting unlawfully under the circumstances.

### D. Best had no constitutional obligation to speak with Plaintiff's attorneys in 2012 after his retirement from the GPD.

The District Court's conclusion that Plaintiff's denial of access to the courts claim could go forward because Best "was involved in Sharpe's post-conviction" efforts and was "interviewed by the Duke Wrongful

Conviction Clinic in 2012" constitutes reversible error (J.A. 2783).[10] To state a claim based on denial of the right to access, a plaintiff "must establish (1) that he lost the opportunity to pursue a nonfrivolous, arguable, underlying claim, (2) the official acts frustrating the litigation; and (3) that the relief he seeks is unobtainable in other suits." *Murdock v. Thompson*, No. 20-6278, 2022 WL 17352171, at *4 (4th Cir. Dec. 1, 2022) (internal quotation omitted) (unpublished). Even if Plaintiff had pleaded sufficient facts to establish a prima facie case of denial of access—which he has not as he fails to allege facts supporting the second and third elements—qualified immunity still bars his claim against Best, as outlined above.

Best retired from the GPD in October of 2003. (J.A. 2650). Therefore, by 2012, Best had no affirmative duty to provide information to Plaintiff's attorneys as a former law enforcement officer. Even if such a duty had existed, it was not clearly established at the time. A

---

[10]    Plaintiff also contends that Best's failure to admit to nearly all the wrongdoing Plaintiff alleges Best to have committed in other parts of his complaint constitutes denial of access. However, such circular logic is nonsensical and was not addressed by the Order as a basis for denial of summary judgment. As such, Best ignores this argument.

reasonable, retired police officer in 2012 would not have understood that they were required to provide information to a defendant's attorneys in support of post-conviction efforts. Retired officers in Best's position would not have been on notice that their conduct would be deemed unlawful under these circumstances. Therefore, Plaintiff's claim for denial of right to access is barred by qualified immunity.

### E. The right to preservation of useful post-conviction evidence was not clearly established in 2004.

At the time of the alleged destruction of evidence in 2004, it was not clearly established in the Fourth Circuit that a retired police officer could be held liable under 42 U.S.C. § 1983 for the destruction of *post-conviction evidence*. Plaintiff alleges Best caused numerous items of physical evidence, used in the trial, to be destroyed in response to Plaintiff's post-conviction efforts in 2004. In 1988, the Supreme Court held that the bad faith "failure to preserve potentially useful evidence" may violate the due process clause if "the criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). However, the *Youngblood* line of cases exclusively addressed *pre-trial* destruction of evidence. *Illinois v. Fisher*, 540 U.S. 544, 546–47

(2004) (discussing *Youngblood* in the context of pre-trial destruction of evidence). As of 2004, no binding precedent in the Fourth Circuit extended the duty to preserve evidence or maintain investigative responsibilities to retired officers, particularly in the post-conviction context.

Critically, the Fourth Circuit specifically contemplated creating a "new rule" extending the preservation of evidence rule to post-trial evidence in 2005 and declined to do so. *See Lovitt v. True*, 403 F.3d 171, 187 (4th Cir. 2005) ("As the Virgina court observed, this departs from the *Youngblood* line of cases which instead involved pre-trial destruction of evidence. Extending the destruction of evidence rule today might impermissibly create a 'new rule' on federal habeas review"). Given the specific case law confirming the ambiguity of preserving post-trial evidence in 2005 and the lack of authority addressing the liability of retired officers for failing to preserve evidence, a reasonable officer in Best's position would not have understood his conduct to be unlawful under clearly established precedent. Accordingly, qualified immunity bars Plaintiff's destruction of evidence claim against Best.

**F.      Melvin Is Entitled to Qualified Immunity on the Failure to Intervene Claim.**

**1.      Bystander liability was not clearly established in 1994 and 1995.**

This Court first recognized the concept of bystander liability in 2002 – eight years after the alleged misconduct by Melvin. *See Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002) ("The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them."); *North Carolina ex rel. Hailey v. Westmoreland*, 267 F. Supp. 2d 497, 503 (M.D.N.C. 2003) (finding bystander liability was not clearly established right at time of assault in 2001). This Court acknowledged in *Randall* that it had "not [previously] definitively assessed the circumstances under which bystander liability might attach to a law officer, although we have indicated that such circumstances *may* exist." *See id.* (emphasis added). Therefore, prior to 2002, the duty of an officer to intervene "where the officer knows that a fellow officer is violating an individual's rights [and] has a reasonable opportunity to prevent the violation," *Quinn v. Zerkle*, 111 F.4th 281, 295–96 (4th Cir. 2024), was not a clearly established right because the legal principle was

not "settled law" in 1994. *See Wesby*, 583 U.S. at 63. Even though the *Randall* court cited *Jackson v. Pantazes*, 810 F.2d 426, 430 (4th Cir.1987) as evidence it previously "indicated that such circumstances <u>may</u> exist[,]" Supreme Court precedent provides "[i]t is not enough that the rule is *suggested* by then-existing precedent." *Wesby*, 583 U.S. at 63 (emphasis added).

Accordingly, bystander liability, or the duty of an officer to intervene to prevent the constitutional violation by a fellow officer, was not clearly established when Melvin allegedly failed to intervene to prevent Best from (i) allegedly fabricating Johnson's statement in 1994 and (ii) using the statement to convict[11] Plaintiff in 1995. The District Court erred in finding bystander liability was clearly established in 1994

---

[11] Melvin did not convict Plaintiff of first-degree murder. A jury of twelve of Plaintiff's peers did. (J.A. 2330-2334). Instead, the prosecutor made an independent decision to indict Plaintiff on the charge of first-degree murder based on the investigative file supplied to him by Detectives. Melvin did not lie or mislead the prosecutor, as she believed Johnson's statement was true in 1994 and at trial in 1995 when she testified to that effect. (J.A. 0907, 2191-2211). *See Clarke*, 90 F.4th at 648 (4th Cir. 2024) ("Once the prosecutor's office has taken control of a case, law enforcement officers are generally not responsible for the prosecutor's decisions going forward unless the officer has withheld substantial evidence or lied or misled the prosecutor.") (cleaned up).

and 1995, and Melvin is entitled to qualified immunity on the failure to intervene claim.

> **2.** **Even if bystander liability was clearly established in 1994 and 1995, which is denied, the specific right at issue was not clearly defined.**

Here, the District Court defined the purportedly clearly established right generally – "defendant Melvin failed to intervene, resulting in the denial of fair criminal proceedings." (J.A. 2780). However, in *Atkinson v. Godfrey*, 100 F.4th 498, 505 (4th Cir. 2024), this Court reiterated that "[t]he way in which an alleged right is described matters. Courts must not define clearly established law at a high level of generality. Defining the right at a high level of generality avoids the crucial question whether the officer acted reasonably in the particular circumstances that he or she faced." For example, in *Balogh v. Virginia*, supra, this Court held the there was no clearly established right for officers to intervene on behalf of a protestor during a protest where the protestor failed to explain why officers "would know that they had to intervene on his behalf during an increasingly violent protest." 120 F.4th 127, 138 (2024), *rev. den.*, No. 24-891, 2025 WL 1020379 (U.S. Apr. 7, 2025).

Thus, the relevant inquiry is whether the right to be free from a detective sitting in an interview room with her co-detective and a 14-year-old eyewitness to a homicide, while the witness writes a statement about the homicide she witnessed, was clearly established in 1994.

While "[a]ny police interview of an individual suspected of a crime has coercive aspects to it[,] . . . [o]nly those interrogations that occur while a suspect is in police custody, however, heighten the risk that statements obtained are not the product of the suspect's free choice." *J.D.B. v. North Carolina*, 564 U.S. 261, 268–69 (2011) (cleaned up). However, here, Plaintiff did not offer any evidence below that Johnson was in custody to trigger the protections afforded to juveniles in N.C. Gen. Stat. §§ 7B-2000, 7B-2101. *See Matter of D.A.H.*, 277 N.C. App. 16, 22, 857 S.E.2d 771, 778 (2021) ("[T]he protections of *Miranda* and § 7B-2101 are only triggered when the juvenile is subjected to a custodial interrogation.") Plaintiff, likewise, did not cite any North Carolina statute below that required Johnson's legal guardian to be present for the interview on April 7, 1994. *See Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001) ("[T]here is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a

particular manner," and no heightened standard should apply to interviews of child witnesses in non-sexual abuse cases.") Therefore, the interview Detectives conducted of Johnson, an eyewitness and not a suspect, did not violate any clearly established law in 1994.

The undersigned is, likewise, not aware of Fourth Circuit, United States Supreme Court, or North Carolina Supreme Court precedent that makes it sufficiently clear that reasonable officers in 1994 would have understood that failing to intervene during a "normal" witness interview violated the plaintiff's constitutional rights. (J.A. 889). The District Court determined it was *undisputed* that "Johnson wrote out a statement that day in which she implicated Sharpe and Mark Joyner in the murder[.]" (J.A. 2775). Melvin, likewise, testified that "[w]hen [she] was in the room with Ricky and Charlene, there was nothing abnormal." (J.A. 889). Plaintiff did not allege Melvin stood by and watched as Best purportedly told her what to write, and therefore, Melvin lacked any knowledge of a constitutional violation on April 7, 1994, or at trial in July 1995. (J.A. 411-412). Accordingly, Melvin lacked knowledge that Best allegedly violated Plaintiff's constitutional rights, and therefore, did not have a

duty to intervene to prevent a fabrication that she did not know about in 1994. *See Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

In sum, in 1994, there was no clearly established right for detectives to intervene and stop any witness interview where they may have reservations about the witness' credibility, as such a duty would entirely eviscerate the criminal investigative process. A reasonable officer in Melvin's shoes was not on notice on April 7, 1994, that her failure to stop Johnson from writing a handwritten statement based on what she witnessed violated Plaintiff's constitutional rights. (J.A. 962) (Q: "And up until the time that Ms. Johnson testified in the criminal trial of Dontae Sharpe in July of 1995, did you give her any written material or anything of that nature to tell her to base her testimony on?" A: "No, sir." Q: "Did you tell her how she should testify at the trial that day in July of 95?" A: "No, sir."). The doctrine of qualified immunity protects Melvin from liability for any such alleged errors in Johnson's witness interview and subsequent use of the statement by prosecutors at trial in 1995. This Court should reverse the decision of the District Court denying Melvin's motion for summary judgment on qualified immunity grounds with respect to the failure to intervene claim.

**G.    Detectives Are Entitled to Qualified Immunity on the Knowing Use of False Evidence Claims.**

Despite the Supreme Court cautioning against "extremely abstract rights" in the qualified immunity context in *White v. Pauly*, the District Court, here, framed the right broadly as the knowing or reckless use of false evidence to obtain Plaintiff's arrest and conviction. (J.A. 2781). The District Court cited *United States v. Chavez*, 894 F.3d 593, 599 (4th Cir. 2018) (citing *Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959)) in support of its determination that "[a] conviction based on the use of falsified evidence violates the Fourteenth Amendment." (J.A. 2781). However, *Chavez* did not involve a detective using the handwritten statement of a witness in obtaining an arrest warrant; instead, *Chavez* involved the use of perjured testimony that the witness, a MS-13 member and government cooperator, corrected on cross-examination, which is not the situation confronting this Court. *See Chavez,* 894 F.3d at 599–601.

Accordingly, the relevant inquiry here is whether the right to be free from a detective's use of a handwritten statement, provided by an

eyewitness to a homicide, in obtaining an arrest warrant[12], was clearly established at the time of the alleged misconduct in 1994 and 1995.

As this Court knows, there is no "established constitutional right not to be deprived of liberty as a result of false evidence negligently gathered by a government officer." *Robertson v. Elliott*, 315 F. App'x 473, 477 (4th Cir. 2009) ("There is no constitutional right that protects against the deprivation of liberty as a result of negligently gathered evidence."). *See also Zahrey v. Coffey*, 221 F.3d 342, 348 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . .does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.") (internal quotation marks omitted). As the Supreme Court espoused in *Daniels v. Williams*, "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property," which is precisely the issue before this Court. 474

---

[12]  The undersigned focuses solely on the arrest warrant as opposed to Plaintiff's conviction because Melvin did not obtain Plaintiff's conviction. This Court in *Evans v. Chambers* rejected the plaintiffs' argument that the officers remained liable because they "misrepresented, withheld, or falsified evidence that ultimately influenced the grand jury," which is precisely the argument Plaintiff will likely make here and should be rejected. 703 F.3d at 638.

U.S. 327, 328 (1986) (emphasis added). *See Jean v. Collins*, 221 F.3d 656, 660 (4th Cir. 2000) (en banc).

Here, like in *Robertson* where a confidential informant created the false evidence, Johnson, a witness, wrote out the handwritten statement she provided to Detectives. It is undisputed that Detectives did not create the handwritten statement. Whether Melvin acted negligently in "allow[ing] Best to take investigative steps without her supervision and/or approval" presents a question of fact to be decided by a jury, which is not before this Court. (J.A. 412). Instead, the record shows Melvin did not know that Johnson's statement was false on April 7, 1994, and therefore, did not <u>knowingly</u> use false evidence. (J.A. 907) (Q: "And at all times that you had conversations with Charlene, Charlene always maintained that, yes, she saw Dontae Sharpe kill George Radcliffe, correct?" "A. Yes. The first time I ever heard a difference, I had left the PD and that's when Sarah said she recanted it. I never known anything different.")

While a law enforcement officer's introduction of false testimony or evidence is imputed to the State, that situation does not confront the Court. *See Boyd v. French*, 147 F.3d 319, 329 (4th Cir.1998). Here, the

District Court improperly imputed the alleged acts of "Best instruct[ing] Johnson about what to say in her handwritten statement" to Melvin. (J.A. 2781).

Similarly, the District Court's reliance on the "hotly disputed" allegation that "Best coached Johnson [and Stokes] into making their statement[s]" is misplaced. (J.A. 2782). Again, Plaintiff has not alleged that Best provided the information in Johnson's initial statement in which she implicated Plaintiff in the murder. (J.A. 0377) ("Best therefore fabricated an explanation for the discrepancy between [Johnson's] initial statement and the physical evidence at the scene, and had Charlene write it *below her original statement* just four minutes later."). It was not clearly established in 1994 that a detective could not use leading techniques during non-custodial witness interviews following a suspect's identification. There is no allegation that Best threatened Johnson or Stokes, and the undisputed facts demonstrate that Johnson and Stokes

knew Plaintiff personally and misidentification was not at issue in this case.[13]

Moreover, Plaintiff has brought a claim for reckless use of false evidence not a claim for fabrication of evidence, and he does not claim that Best wrote Johnson's statement, which distinguishes this case from *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005), and its progeny. Even assuming a fabrication claim had been asserted, it would fail for lack of causation. The connection between Johnson's initial statement and Plaintiff's detention is too attenuated, particularly given that both she and Stokes offered consistent testimony at the 1995 trial. (J.A. 1954-2004, 2132-2161). *See Hovatter v. Widdowson*, No. CCB-03-2904, 2006 WL 890713, at *10 (D. Md. Mar. 29, 2006), *aff'd*, 228 F. App'x 344, 345 (4th Cir. 2007) ("The 1995 testimony negates any inference of a causal link between the false application and [Plaintiff's] continued detention and trials.").

---

[13]    Police were prohibited from using unnecessary and suggestive *identification* procedures in 1994 but that is not the issue the Court faces here. *Mason v. Brathwaite*, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

Put simply, it would not have been clear to a reasonable officer in 1994 that it was improper to encourage a witness to provide a written statement or to employ leading techniques after the witness had already identified the perpetrator and provided a written statement.

In sum, Detectives did not violate any clearly established constitutional right and are entitled to qualified immunity on this claim. The District Court erred in broadly defining the right at issue and finding it was clearly established in 1994.

## V. Detectives are Entitled to Public Official Immunity.

"Public official immunity shields individuals, while serving as public officials, from individual liability for negligence, as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption." *Petrillo v. Barnes-Jones*, 291 N.C. App. 62, 67, 894 S.E.2d 772, 777 (2023) (internal brackets and quotation marks omitted). Importantly here, "[a] police officer is a public official." *Jones v. Kearns*, 120 N.C. App. 301, 305, 462 S.E.2d 245, 247 (1995) (citation omitted). Discretionary acts require "personal deliberation, decision and judgment." *See id.* North Carolina law

"presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *Knibbs v. Momphard*, 30 F.4th 200, 227 (4th Cir. 2022) (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 24, 848 S.E.2d 1, 12 (2020)). To rebut the presumption, a plaintiff must show that the officer's act was (1) corrupt or malicious, or (2) outside the scope of his official duties. *See Hensley*, 876 F.3d at 587 (citing *Wilcox v. City of Asheville*, 222 N.C. App. 285, 730 S.E.2d 226, 230 (2012)). "Elementally, a malicious act is one which is (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." *Bartley v. City of High Point*, 381 N.C. 287, 296, 873 S.E.2d 525, 534 (2022) (internal quotation marks and citation omitted).

Under North Carolina law, public official immunity is not available to officers who violate clearly established rights, and therefore, the converse should be true. *See Caraway v. City of Pineville*, 111 F.4th 369, 386 (4th Cir. 2024) ("Public official immunity is unavailable to officers who violate clearly established rights[.]")

Here, it is undisputed that Detectives were sworn law enforcement officers in 1994 and 1995, and therefore, are public officials entitled to

immunity. *See Caraway*, 111 F.4th at 385. Further, as set forth above, they had probable cause, as a matter of law, and did not violate the clearly established rights discussed herein, and therefore, are entitled to public official immunity. Accordingly, this Court should reverse the decision of the District Court denying Detectives public official immunity on the gross and reckless negligence claim.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants Best, Shrock and Melvin respectfully request that this Court reverse the portion of the Order that denied summary judgment to them on the basis of qualified immunity and reverse the portion of the Order that denied summary judgment to Best and Melvin on the basis of public official immunity and award summary judgment in their favor, thereby, dismissing the action against them and granting such other relief as this Court deems just and proper.

This the 15th day of April, 2025.

MARTINEAU KING

By: /s/ Elizabeth A. Martineau
Elizabeth A. Martineau
N.C. State Bar No. 26394
emartineau@martineauking.com
P.O. Box 241268
Charlotte, NC 28224
Telephone: (704) 247-8524
Fax: (704) 247-8582

*Attorneys for Defendants David
Ricky Best and Jeffrey Shrock*

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: /s/ Peter Clements
Peter Clements
N.C. State Bar No. 57853
peter.clementsjr@wilsonelser.com
227 West Trade Street
Suite 300
Charlotte, NC 28217
Telephone: (704) 302-1304

*Attorneys for Defendants David
Ricky Best and Jeffrey Shrock*

**POYNER SPRUILL LLP**

By:  /s/ J. Nicholas Ellis
      J. Nicholas Ellis
      N.C. State Bar No. 13484
      jnellis@poynerspruill.com
      Sydney P. Davis
      N.C. State Bar No. 58038
      sdavis@poynerspruill.com
      P.O. Box 353
      Rocky Mount, NC 27802-0353
      Telephone: (252) 446-2341
      Fax: (919) 783-1075

      Michele L. Livingstone
      N.C. State Bar No.
      mlivingstone@poynerspruill.com
      301 South Charlotte Street
      Suite 2900
      Charlotte, NC 28202
      Telephone: (704) 342-5335
      Fax: (704) 342-5264

      *Attorneys for Defendant Carolyn Melvin*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,799 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, using Microsoft Word in 14-point Century Schoolbook type.

This 15th day of April, 2025.

/s/ Peter Clements
Peter Clements
*Counsel for Defendants-Appellants*
*David Ricky Best and Jeffrey Shrock*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system.

I further certify that all participants are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Peter Clements
Peter Clements

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 25-1155          Caption: Montoyae Sharpe v. David Best, Jeffrey Shrock and City of Greenville

Pursuant to FRAP 26.1 and Local Rule 26.1,

David Ricky Best
(name of party/amicus)

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Peter Clements                        Date:        3/6/2025

Counsel for: Appellants Ricky Best, Jeffrey Shrock

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>25-1155</u>      Caption: <u>Montoyae Sharpe v. David Best, Jeffrey Shrock and City of Greenville</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Jeffrey D. Shrock</u>
(name of party/amicus)


who is <u>Appellant</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Peter Clements                           Date:      3/6/2025

Counsel for: Appellants Ricky Best, Jeffrey Shrock

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1155__     Caption: __Montoyae Sharpe v. David Best et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Carolyn Melvin__
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ J. Nicholas Ellis _____    Date: ___2/27/2025_____

Counsel for: Appellant Carolyn Melvin _____

Print to PDF for Filing

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. _____      Caption: _____

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ ]   this brief or other document contains _____ [*state number of*] words

[ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[ ]   this brief or other document has been prepared in a proportionally spaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*];

**or**

[ ]   this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s)_____

Party Name_____      Date:_____